IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01584-PAB-MEH

JEREMY NECHOL DENISON,

      Plaintiff,

v.

CORRECTIONAL HEALTH PARTNERS, Utilization Mgmt Comm.,
JILL LAMPELA, CSP HSA,
NEAL LOUSBERG, CSP Medical Provider,
RICHARD HODGE, CSP Medical Provider,
MARK WIENPAL, CSP Medical Provider,
KATHLEEN BOYD, CSP Medical Provider, and
JOSEPH WRIGHT, CSP Medical Provider,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Before the Court is a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) by Defendants Boyd, Hodge, Lampela, Lousberg, Wienpal and Wright ("CDOC Defendants") [filed February 3, 2014; docket #49]. The motion has been referred to this Court for recommendation (docket #29), and the Court finds that oral argument will not assist in the adjudication of the motion. Based upon the record herein and for the reasons that follow, the Court RECOMMENDS that Defendants' motion be **GRANTED IN PART AND DENIED IN PART**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo

# BACKGROUND

Plaintiff initiated this lawsuit pursuant to 42 U.S.C. § 1983 as a *pro se* litigant currently incarcerated in the Arkansas Valley Correctional Facility. Plaintiff filed the operative complaint on June 17, 2013. (Docket #1.)

## I.   Facts

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiff in his Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(1) pursuant to *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) and under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

During his incarceration, Plaintiff was prescribed Indocin to manage his back pain from 2004 until 2010. Plaintiff alleges that on March 25, 2009, he signed a settlement agreement with the Colorado Department of Corrections ("CDOC") regarding medical treatment for his back problems. Plaintiff attached a copy of the settlement agreement, which provides in pertinent part:

> 4.    The parties agree that Plaintiff will receive a priority appointment with Dr. Koons for a medical evaluation relating to his back problems. The parties further agree that if Dr. Koons recommends that Plaintiff receive another round of facet block injections, Defendants will approve that treatment. The parties further agree that Plaintiff will receive a priority follow-up appointment with Dr. Koons for further evaluation relating to his back problem. If Dr. Koons recommends additional medical treatment at that time, Plaintiff will pursue a request for such treatment through ordinary CDOC

---

determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

channels.

Draft Settlement Agreement-Confidential, docket #1 at 18.[2]  Apparently, the Plaintiff saw Dr. Koons

on July 9, 2010, at which the doctor recommended the Plaintiff undergo an MRI.   However,

Correctional Health Partners ("CHP") initially denied Plaintiff's request for the MRI saying "[t]he

UMC [utilization management committee] recommends the specialist to submit the request for MRI

of the spine with notes."   September 7, 2010 Letter from CHP to the Colorado Territorial

Correctional Facility ("CTCF"), docket #1 at 23.  Eventually, the MRI was approved and scheduled

for December 29, 2010.  When the Plaintiff appeared for the test, however, the hospital informed

him that the MRI machine never operates on that day of the week.  No subsequent appointment was

made, and the Plaintiff has never undergone the MRI as approved.

The Plaintiff was transferred from the CTCF to the Colorado State Prison ("CSP") in

February 2011; his medical evaluation at that time reflects that the MRI was still approved.  Plaintiff

asserts that the CTCF medical had prescribed Baclofen to be taken for muscle spasms every three

days or if a muscle spasm occurred.  The Baclofen, taken in conjunction with Gabapentin, was

effective in relieving Plaintiff's muscle pain.

On July 18, 2011, a non-formulary committee recommended checking Plaintiff's serum level

for a "high" dose of Gabapentin.  On July 28, 2011, test results revealed a level of 2.4 mg/ml, which

---

[2]As a general rule, a motion to dismiss for failure to state a claim upon which relief can be granted must be converted into a motion for summary judgment whenever the district court considers matters outside the pleadings. Fed. R. Civ. P. 12(d).  However, if a plaintiff incorporates by reference or attaches a document to its complaint, the document may be considered on a motion to dismiss. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *see also Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (noting that documents are not "outside the pleadings" if they are "referred to in the plaintiff's complaint and are central to his claim").

Plaintiff describes as "slightly low." Nevertheless, medication was continued. On August 13, 2011, Defendant Kathleen Boyd noted that she would request an MRI, but there was no request form in Plaintiff's medical file.

On May 31, 2012, Plaintiff saw Defendant Neal Lousberg because he was having trouble "keeping down" the Gabapentin, which was now distributed to him as "crushed and floated." Lousberg explained that it was now state policy to crush and float the medication and there was nothing he could do to change that. However, he increased Plaintiff's dosage in an effort to improve the medication's effectiveness. Plaintiff also asked Lousberg about the MRI; Lousberg refused to submit a new request for the MRI. On July 29, 2012, Plaintiff's dose of medication was not provided and, apparently, was confiscated and his prescription for Gabapentin discontinued because Lousberg determined that Plaintiff was hoarding the medication, which he deemed "non-essential."

On August 1, 2012, Plaintiff's blood was taken, but it was not tested for Gabapentin levels; thus, based on an old test done in 2011, the medication was not reinstated. On August 6, 2012, Plaintiff asked Defendant Boyd about the MRI; she refused to submit a new request. Boyd also refused to reinstate the Gabapentin prescription and advised Plaintiff to file a grievance. Lousberg denied that grievance on August 20, 2012.

On August 22, 2012, Plaintiff saw Defendant Mark Wienpal and asked about the status of the MRI. Wienpal refused to submit a new request and refused to reinstate the Gabapentin. However, Wienpal suggested an alternative medication that Plaintiff agreed to try before realizing that he had already tried it without relief. Later, on September 20, 2012, Plaintiff saw Defendant Richard Hodge and asked about the status of the MRI. Hodge refused to submit a new request and refused to reinstate the Gabapentin. However, Hodge changed the medication to Baclofen, which

4

made the pain worse.  Hodge also insisted on scheduling trigger point injections for Plaintiff's pain despite Plaintiff's objections that the first and second attempts did not relieve his pain.

On November 1, 2012, Plaintiff saw Lousberg and again asked about the MRI; Lousberg refused to submit a new request.  Plaintiff also told Lousberg that he did not want the trigger point injections, so Lousberg suggested a new medication which Plaintiff agreed to try.  On November 20, 2012, Plaintiff was taken to medical where Hodge insisted that he undergo trigger point injections.

Plaintiff filed a grievance on December 11, 2012 requesting "that the DOC and CHP request, approve and have the court[-]ordered treatment performed and that Gabapentin be resumed to manage the pain as it is necessary."  CDOC Offender Grievance Form, December 11, 2012, docket #1 at 25.  Plaintiff's grievance was denied "on procedural grounds" for addressing more than one problem or complaint.  *Id.*  Plaintiff filed a "step two" grievance on January 9, 2013 insisting that his one problem is the denial of medical care for his back by the CDOC and CHP.  CDOC Offender Grievance Form, January 9, 2013, docket #1 at 26.  The facility's response mistakenly listed on the form involved a completely different matter and inmate.  *Id.*  Finally, Plaintiff filed a "step three" grievance expressing his astonishment at the mistake and repeating the request made in the step one grievance.  CDOC Offender Grievance Form, February 7, 2013, docket #1 at 27.  A grievance officer responded finding that Plaintiff's "treatment appears to be adequate and appropriate for [his] condition" and "[r]ecommendations by specialists are just that, recommendations, which do not necessarily have to be followed by DOC personnel."  March 11, 2013 Letter from Anthony DeCesaro to Plaintiff, docket #1 at 28.

On March 17, 2013, Defendant Joseph Wright discontinued Plaintiff's prescription for

Baclofen without informing the Plaintiff or discussing the matter with him.  A nurse informed the Plaintiff that, because the medication was crushed and floated, it had to be discarded whenever the Plaintiff denied it and, because the Plaintiff did not accept the medication every time it was offered, it was canceled.  Plaintiff believes Wright was not aware of the regimen prescribed by CTCF medical staff in which the Plaintiff was to take the Baclofen every three days or if a spasm occurred.

Plaintiff is "in great pain from nerve damage and hypertention [sic]."  He believes that if he is not evaluated as directed by Dr. Koons in July 2010, he risks permanent injury.  Complaint, ¶¶ 27, 28, docket #1.

## II.    Procedural History

Based upon these factual allegations, Plaintiff alleges that Defendants deprived him of his Eighth Amendment right against cruel and unusual punishment by Defendants' deliberate indifference to Plaintiff's serious medical needs.  Complaint, docket #1.  Plaintiff requests compensatory and punitive damages as relief against the individual Defendants jointly and severally, and a declaration that Defendants violated Plaintiff's Eighth Amendment rights by failing to provide adequate medical care and by failing to properly investigate Plaintiff's grievances.  (*Id*. at 15-16.)

On August 15, 2013 during initial review, Judge Babcock dismissed Plaintiff's claims against the CDOC and Defendant Anthony DeCesaro, but allowed Plaintiff's Eighth Amendment claims for inadequate medical care to proceed against one entity (CHP) and six individuals.  Order, docket #8.

The remaining individual Defendants, characterized as the CDOC Defendants, responded to the Complaint by filing the present motion on February 3, 2014 arguing that claims for monetary damages against the Defendants in their official capacities are barred; that Defendants in their

6

individual capacities are entitled to qualified immunity; that Plaintiff fails to state Eighth

Amendment claim against the individual Defendants; and that the Court should decline to exercise

supplemental jurisdiction over Plaintiff's breach of contract claim, which he also fails to state.

On February 4, 2014, this Court ordered the Plaintiff to file a response to the motion on or

before February 24, 2014.  Minute Order, docket #51.  On February 23, 2014, Plaintiff submitted

a motion seeking a 10-day extension of time to respond; the Court granted the motion and ordered

Plaintiff to file a response on or before March 6, 2014.  Docket #54.  Plaintiff's response brief is

dated March 6, 2014 but was not received in this Court until March 13, 2014.  Docket #57.  Without

objection from the Defendants, the Court accepts Plaintiff's response as filed.

Plaintiff counters that his breach of contract claim – based upon an alleged breach of a

settlement agreement – should not be dismissed because the denial and/or delay of medical treatment

arises from Defendants' non-compliance with the settlement agreement's provision that "Plaintiff

will receive a priority appointment with Dr. Koons for a medical evaluation relating to his back

problems."  Response, docket #57 at 2-3.  Plaintiff claims that an MRI is "an *evaluating* tool to help

determine a course of treatment."  *Id.* (emphasis added).  Further, Plaintiff argues that a doctor has

ordered treatment for his back problem and, thus, it is sufficiently serious for purposes of the Eighth

Amendment.  Plaintiff also contends that Defendants disregarded a risk of substantial harm, because

they knew from the settlement agreement and medical records that he has a back problem, but

refused to re-order the previously approved MRI.  In addition, Plaintiff argues that the "named

CDOC Defendants may not be culpable for the particular time before the use of Indocin, but they

are culpable for prolonged use of other medication as is the policy of CDOC and it's [sic] medical

department."  *Id.* at 6.  Finally, Plaintiff asserts that the Defendants were acting in their official

capacities and, thus, are properly sued as individuals for monetary damages.

Defendants reply that the plain language of the settlement agreement provides only for a "priority appointment" with Dr. Koons and that the Plaintiff would pursue any requests for treatment (other than facet block injections) through "ordinary CDOC channels." Reply, docket #58 at 2-3. Moreover, Defendants contend that Plaintiff's allegation concerning prolonged use of Indocin is not, and cannot be, attributed to any of the named Defendants and, thus, should be dismissed. Additionally, Defendants claim that Plaintiff's allegations against Lampela "merely demonstrate a mistake in responding to a grievance," which is insufficient to establish the requisite personal participation and subjective component in an Eighth Amendment violation. *Id.* at 4-5. Finally, Defendants assert that Plaintiff's allegations against Wright, Wienpal, Boyd, Lousberg and Hodge establish only that he disagrees with the course of treatment prescribed by these providers, that all of these providers merely disagree with Dr. Koons as to whether an MRI is necessary, and that Plaintiff fails to allege how the treatment provided him would be any different if he were to undergo an additional MRI. *Id.* at 6-7.

## LEGAL STANDARDS

### I.      Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which

it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Smith v. Krieger*, 643 F. Supp. 2d 1274, 1289 (D. Colo. 2009) (quoting *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971)). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005). Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Ingram v. Faruque*, 728 F.3d 1239, 1242 (10th Cir. 2013).

> Rule 12(b)(1) motions can take the form of either a "facial" or a "factual" attack on the court's subject matter jurisdiction. Where the party challenging subject-matter jurisdiction mounts a facial attack, "the district court must accept the allegations in the complaint as true." But if the challenging party brings a factual attack by "go[ing] beyond allegations contained in the complaint and challeng[ing] the facts upon which subject matter jurisdiction is based ... [the] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."

*Id.* (citations omitted). The present motion launches a facial attack on this Court's subject matter jurisdiction; therefore, the Court will accept the truthfulness of the Complaint's factual allegations.

## II.   Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires

a two prong analysis.  First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id.* at 679-80.  Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id.* at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)).  "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).  Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim.  *Khalik*, 671 F.3d at 1191.

## III.    Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf."  *Whitney v. State of N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal

theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant."  *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) ("we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded") (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).  A *sua sponte* dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'"  *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

The Court is now sufficiently advised and recommends as follows.

## ANALYSIS

"When a defendant seeks dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative, the court must decide first the 12(b)(1) motion for the 12(b)(6) challenge would be moot if the court lacked subject matter jurisdiction." *Mounkes v. Conklin,* 922 F. Supp. 1501, 1506 (D. Kan. 1996) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)).

## I.    Sovereign Immunity

Plaintiff specifies in the Complaint that he sues Defendants in both their official capacities and individual capacities.  With respect to the official-capacity claims, Defendants argue they are absolutely immune from liability for monetary damages and declaratory relief pursuant to the doctrine of sovereign immunity.

Claims against state officials in their official capacities are essentially claims against the state

entity. *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted).  It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994).  Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village of Noatak & Circle Village*, 501 U.S. 775, 785-86 (1991).  Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of his or her federal rights.  *See Ex parte Young*, 209 U.S. 123, 159-60 (1908).  But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

In paragraph A under Plaintiff's Request for Relief, he seeks, as pertinent here,

A. Grant the plaintiff a declaration that the acts and omissions described herein violate his rights under the Constitution and laws of the United States, and issue a declaratory judgment declaring that:

...

2. Defendants Lampela, Lousberg, Hodge, Wienphal [sic], Boyd and Wright failed in their duty to provide adequate medical care for the plaintiff, and that they violated

12

and continue to violate, the plaintiff's rights under the 8th Amendment to the U.S. Constitution and constitutes negligence, misfeasance and nonfeasance under state law.

3. Defendants Lampela, Lousberg and DeCesaro[3] failed in their duty as grievance personnel to properly and independently investigate claims of grievance and failure to correct improper action or policy of medical department violated the plaintiff's rights under the 8th Amendment to the U.S. Constitution and constitutes negligence and nonfeasance under state law.

Complaint, docket #1 at 15-16.  Because the Plaintiff seeks "a declaration that a state officer has violated a plaintiff's federal rights in the past," Plaintiff's request for declaratory relief is not saved by the *Young* exception.  However, the Plaintiff also seeks the following injunctive relief:

B. Issue a preliminary and permanent injunction ordering the CDOC Medical Department and/or their agents to:

1. Honor the settlement agreement and immediately arrange for an MRI and plaintiff's need for continued treatment or other follow-up medical treatment to be evaluated by Dr. Koons or other qualified specialist,

2. Immediately arrange to discuss with plaintiff the need to reinstate and establish [an] effective medication regimen to manage pain with Gabapentin until the cause of the pain is corrected and implement that regimen immediately.

Complaint, docket #1 at 16.  Plaintiff's request for prospective injunctive relief against the Defendants in their official capacities is not barred by the Eleventh Amendment.  *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).  But, to establish his entitlement to this form of relief, Plaintiff's Complaint must contain sufficient factual allegations to state a claim for an Eighth Amendment violation.  *Abu-Fakher v. Bode,* 175 F. App'x 179, 181 (10th Cir. 2006) (unpublished).  Therefore, to the extent Plaintiff's Complaint may be construed as seeking declaratory relief and monetary damages against Defendants in their official capacity, the Court recommends that the

_____

[3]Again, Defendant DeCesaro was dismissed by Judge Babcock during initial review.

motion to dismiss be granted. However, the Court has subject matter jurisdiction to hear Plaintiff's request for injunctive relief against Defendants in their official capacity, but to be entitled to this relief, Plaintiff must plausibly state an Eighth Amendment violation against each Defendant.

## II.    Qualified Immunity

Defendants assert they are entitled to qualified immunity on the Eighth Amendment claims against them in their individual capacities. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "It is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

Qualified immunity is designed to shield public officials and ensure "that erroneous suits do not even go to trial." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 779 (10th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow*, 457 U.S. at 806-08 (1982); and *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988)). Consequently, courts should address the qualified immunity defense at the earliest possible stage in litigation. *Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged

unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

The Supreme Court has discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second – if the court concluded a right had been violated – whether that right was clearly established at the time of the alleged violation. *Pearson*, 555 U.S. at 232-35. *Pearson* instead affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, for Plaintiff's Eighth Amendment claims against the individual Defendants, the Court examines first whether Plaintiff has demonstrated on the alleged facts that Defendants violated his constitutional right against cruel and unusual punishment. If the Court finds that Plaintiff's facts state plausible violations of a right, the Court will then proceed to analyze whether Plaintiff's constitutional right was clearly established at the time of the alleged conduct.

To establish a violation, the Plaintiff must sufficiently allege that (1) Defendants personally participated in the challenged actions, and (2) Defendants were deliberately indifferent to a substantial risk of serious harm to Plaintiff arising from their actions.

A.   Personal Participation

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Thus, there must be an affirmative link between actions taken by a defendant and any plan or policy put into effect that violates a plaintiff's constitutional rights. *Dodds v. Richardson*, 614 F.3d 1185, 1200-01 (10th Cir. 2010).

Supervisory status alone does not create § 1983 liability.  *Duffield v. Jackson,* 545 F.3d 1234, 1239 (10th Cir. 2008).  Rather, liability of a supervisor under § 1983 requires "allegations of personal direction or of actual knowledge and acquiescence. " *Langley v. Adams County, Colo.*, 987 F.2d 1473, 1481 (10th Cir. 1993) (cited with approval in *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997)).  Thus, there must be "an affirmative link ... between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green,* 108 F.3d at 1302 (quotation and brackets omitted).  In other words, the Section 1983 liability is properly imposed "upon individual defendants who act with the requisite degree of culpability to promulgate, create, implement, or otherwise possess responsibility for the continued operation of policies that cause the deprivation of persons' federally protected rights." *Dodds*, 614 F.3d at 1201.

Personal participation is an essential allegation in a civil rights action.  *See Bennett v. Passic,* 545 F.2d 1260, 1262-63 (10th Cir. 1976).  To establish personal participation, Plaintiff must show that each Defendant caused the deprivation of a federal right.  *See Graham,* 473 U.S. at 166.

Here, Plaintiff alleges that he was prescribed Indocin to manage his back pain from 2004 until 2010, and claims that he has suffered kidney damage because of the extended use of Indocin. Defendants counter that Plaintiff makes these allegations against none of them but, rather, specifies that their alleged conduct in this case occurred after he was transferred to the CSP in February 2011. The Court agrees.  In the operative Complaint, Plaintiff does not attribute the alleged extended use of the medication, Indocin, to any Defendant in this case.  Thus, the Plaintiff has failed to allege the Defendants' personal participation in any Eighth Amendment violation concerning his claim of kidney damage.  Accordingly, the Court recommends granting Defendants' motion to dismiss

Plaintiff's Eighth Amendment claims against the individual Defendants with respect to Plaintiff's allegation that the extensive use of Indocin caused him kidney damage.[4]

Furthermore, Plaintiff alleges that "Defendants Lousberg, Lampela and DeCesaro failed ... in their duty to investigate grievances and correct the conduct of medical staff ...." Complaint, ¶ 9 (Cause of Action), docket #1 at 13.  First, "[t]he denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).  As set forth above, Defendant DeCesaro was dismissed from this case during initial review.  Regarding Defendant Lampela, the Court notes that Plaintiff makes no allegation against her other than that she mistakenly included in a response to his step 2 grievance information concerning another inmate.  The Court finds such administrative error to be minor and insufficient to demonstrate Lampela's personal participation in his Eighth Amendment claim.  With respect to Defendant Lousberg, the Plaintiff alleges merely, "[g]rievance was denied by Lousberg on August 20, 2012." Complaint, ¶ 18 (Nature of Case), docket #1 at 8.  The Plaintiff fails to explain the who, what, when, where and why of such grievance; thus, the Court cannot determine whether the grievance has any connection to the Eighth Amendment violation.

To the extent the Plaintiff alleges these Defendants failed to "correct (supervise) the conduct of medical staff," the Plaintiff wholly fails to explain how and whether these Defendants had any supervisory control or management over the medical staff.  Nevertheless, the Court finds the Plaintiff fails to allege "an affirmative link ... between the constitutional deprivation and either the

---

[4]To the extent that the Plaintiff's argues in his response brief that his allegations support a claim that ongoing use of *any and all* medications have caused him kidney damage, the Court finds that the Complaint makes no such allegation.

supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green,* 108 F.3d at 1302.

Accordingly, the Court recommends that the District Court grant Defendants' motion to dismiss Plaintiff's Eighth Amendment claims concerning any lack of appropriate response to Plaintiff's grievances and any failure to "correct the medical staff" against Defendants Lampela and Lousberg.

B.     Eighth Amendment

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras,* 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)).   Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety."  *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)).   Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993);  *Estelle,* 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference.  *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).  The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause."  *Id*. (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006),

*overruled on other grounds by Robbins v. Okla.*, 519 F.3d 1242 (10th Cir. 2008)).   The Tenth Circuit established "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Horton v. Ward*, 123 F. App'x 368, 371 (10th Cir. 2005) (quoting *Sealock v. State of Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

The subjective component is met if the Plaintiff demonstrates Defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293).   The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838).   This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)).   "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [the] condition." *Mata*, 427 F.3d at 755.   However, "a delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'" *Id.* at 751 (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)).   Substantial harm includes "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

Based on his request for relief, Plaintiff alleges the CDOC Defendants (as listed herein) "failed in their duty to provide adequate medical care for the plaintiff and they violated, and continue to violate, the plaintiff's rights under the 8th Amendment" by failing to respond appropriately, or

at all, to the requirements of the settlement agreement; refusing to perform the approved MRI and/or to request/arrange a previously approved MRI; and discontinuing then denying reinstatement of Plaintiff's Gabapentin prescription.   The Court will address each allegation to determine first whether Plaintiff meets the objective prong of the deliberate indifference test and, if so, will proceed to determine whether the Plaintiff meets the subjective prong by demonstrating that each Defendant, by his or her alleged conduct, "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."

1.      Are Plaintiff's Alleged Injuries Sufficiently Serious?

Plaintiff contends he suffers from "hypertension causing high blood pressure ... muscle spasms in [his] lower back, increasing nerve damage, loss of strength," ... and severe pain. Complaint, docket #1 at 11.  Although not specified, the Court can conclude from the content of the allegations that the spasms, nerve damage, lost strength and pain are located in the Plaintiff's back. Therefore, the Court will determine whether Plaintiff's hypertension and back problems are injuries sufficiently serious to invoke the Eighth Amendment.

Although high blood pressure ("hypertension") may mandate treatment by a physician in the form of medication, suffering high blood pressure alone has been found *not* to constitute a sufficiently serious medical condition for purposes of the Eighth Amendment.  *See, e.g., Dickson v. Colman*, 569 F.2d 1310, 1311 (5th Cir. 1978) (finding that plaintiff's high blood pressure was not a 'serious threat' to his health).  Plaintiff alleges no other medical conditions arising or resulting from his high blood pressure that might prove "sufficiently serious."   Thus, the Court finds that Plaintiff fails to allege an Eighth Amendment claim with respect to his hypertension/high blood pressure and recommends that the District Court grant Defendants' motion to dismiss this Eighth

Amendment claim.

Plaintiff alleges that he has suffered back problems since at least 2004 and brought a lawsuit against the CDOC in 2006 based on an alleged lack of medical care for his back.  At that time, Magistrate Judge Kristen Mix recommended and Judge Robert Blackburn affirmed that the CDOC's motion to dismiss be denied for Plaintiff's plausible Eighth Amendment claim alleging that "[d]efendants failed to recognize and treat [plaintiff's] serious medical condition of a herniated lumbar disc, have denied him access to a specialist and have discontinued his medication without providing an alternative." *Denison v. Colo. Dep't of Corrs.*, No. 06-cv-02385-REB-KLM, 2008 WL 732592, at *8 (D. Colo. Mar. 18, 2008).  While there are no allegations in the present Complaint specifically referring to a "herniated lumbar disc," the Court discerns from the allegations that Plaintiff continues to suffer from the same condition.  Plaintiff alleges that an MRI was recommended by Dr. Koons and approved for the treatment of Plaintiff's condition.  Thus, the Court agrees with Magistrate Judge Mix and Judge Blackburn that such alleged condition constitutes a sufficiently serious condition "that has been diagnosed by a physician as mandating treatment" for purposes of analyzing the motion to dismiss.  *See Sealock*, 218 F.3d at 1209.

2.      Do the Allegations Demonstrate Defendants Knew and Disregarded a Substantial Risk of Harm?

In his Complaint, Plaintiff alleges in pertinent part:

6.      By failing to respond appropriately, or at all, to previously established injury and condition of serious medical need by refusing to request an MRI and treatment after learning the previously approved MRI was not done, and especially having known that treatment was ordered by settlement agreement, Defendants Lampela, Lousberg, Hodge, Weinphal and Wright were deliberately indifferent to Plaintiff's serious medical needs in violation of this rights and constituted cruel and unusual punishment proscribed by the Eighth Amendment ....

Complaint, ¶ 6 (Cause of Action), docket #1 at 12.   The Court will analyze whether each of the named Defendants was deliberately indifferent to Plaintiff's back problems.

a.     Jill Lampela

The Court has already recommended that the District Court dismiss Plaintiff's Eighth Amendment claims against Defendant Lampela.  *See supra* at 15-16.  Plaintiff makes no allegations that Lampela is a health care provider and had any actual participation in the lack of medical treatment for his back.

b.     Kathleen Boyd

Plaintiff alleges Boyd conducted a "chart review" upon the Plaintiff's arrival at the CSP in February 2011, which indicated that the MRI was still approved.  Complaint, ¶ 9 (Nature of Case), docket #1 at 6.  Plaintiff also alleges that on August 13, 2011, Boyd "states that she will request an MRI"; however, "[n]o request form can be found in the file. Plaintiff continued medication regimen waiting for MRI." *Id.* at ¶ 13, p. 7.  Plaintiff saw Boyd a year later on August 6, 2012 when he told her "again" about the settlement agreement and asked about the status of an MRI.  Plaintiff alleges Boyd refused to submit a new request for an MRI and refused to reinstate a prescription for Gabapentin. *Id.* at ¶ 17, p. 8.

With respect to Boyd's alleged failure to schedule an approved MRI upon the Plaintiff's arrival at CSP, the Court finds such allegation does not demonstrate deliberate indifference.  "So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met." *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006).  In *Self*, the Tenth Circuit held that the "subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor

merely exercises his medical judgment." *Id.* at 1232. "[D]ecisions as to whether to consult a specialist or undertake additional medical testing" have traditionally fallen into this category. *Id.* Unless the need for additional medical treatment or a referral is obvious, a defendant's missed diagnosis or delayed referral is not actionable. *Id.* "Obviousness" may arise in cases where: (1) a medical professional is aware of his inability to provide adequate treatment, but delays or refuses to provide a referral; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize it; or (3) a medical professional completely denies care despite recognizable symptoms which potentially create a medical emergency. *Id.*

Here, the Plaintiff's allegations do not demonstrate the obviousness necessary to show Boyd's failure to schedule the MRI upon his arrival at CSP is actionable. Plaintiff alleges neither that Boyd was "aware of [her] inability to provide adequate treatment" nor any "recognizable symptoms which potentially create a medical emergency." Further, although a "herniated lumbar disc" itself may appear to a layman as an obvious need for medical treatment, the Plaintiff does not allege that Boyd failed to "provide[ ] a level of care consistent with the symptoms presented by the inmate" when she reviewed his chart less than two weeks after he arrived at the CSP. The allegations confirm that Plaintiff was on a pain management regimen of Baclofen and Gabapentin when he was transferred to CSP. Accordingly, the Court cannot conclude that Boyd's failure to follow up with scheduling an MRI in February 2011 constitutes deliberate indifference to Plaintiff's medical condition.

With respect to Boyd's alleged failure to follow up with scheduling an approved MRI in August 2011, the Court finds such allegation does not demonstrate deliberate indifference. Plaintiff's allegation reveals that Boyd stated she would request the MRI, but there was no request

23

form in the file.  A delay in treatment that is unintentional, or even negligent, however serious the harm, does not violate the Constitution. *Sealock*, 218 F.3d at 104-05 (deliberate indifference "is manifested ... by prison guards in intentionally denying or delaying access to medical care"); *see also Hood v. Prisoner Health Servs., Inc.*, 180 F. App'x 21, 25 (10th Cir. 2006) ("inadvertent or negligent failure to provide medical care, however serious the consequences does not rise to deliberate indifference to serious medical needs."); *Fitzgerald v. Corrs. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Plaintiff's allegations merely reflect forgetfulness, or even negligence, as to Boyd's original statement that she would request an MRI.

With respect to Boyd's refusal to grant Plaintiff's request to reinstate the prescription for Gabapentin, the Court finds such allegation does not demonstrate deliberate indifference.  Plaintiff does not allege that Boyd refused to prescribe him ***any*** medication, just that she refused to prescribe the medication of his choice.  A difference of opinion about the course of medical treatment will not constitute an Eighth Amendment violation.  *Scott v. Gibson*, 37 F. App'x 422, 423 (10th Cir. 2002) (plaintiff's "assertions amounted only to a difference of opinion as to the need for medical ... treatment or the adequacy of any treatment, [therefore] Defendants' acts did not constitute deliberate indifference"); *Self*, 439 F.3d at 1231 ("a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation"); *Estelle*, 429 U.S. at 107 (plaintiff who "suggest [ed] a number of options that were not pursued," when he saw medical personnel on seventeen occasions and was given medication to treat his high blood pressure and back pain, did not state an Eighth Amendment claim for deliberate indifference).

24

Finally, with respect to Boyd's knowledge and refusal to submit a new request for an MRI in August 2012, the Court first addresses Plaintiff's allegation that Boyd failed to comply with the settlement agreement. The Plaintiff has attached a copy of the settlement agreement to the Complaint. (Docket #1 at 18-19.)  "A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal." *Hall*, 935 F.2d at 1112.  As set forth above, Plaintiff and the CDOC agreed "that Plaintiff will receive a priority appointment [and follow-up appointment] with Dr. Koons relating to his back problems," that "if Dr. Koons recommends that Plaintiff receive another round of facet block injections, Defendants will approve that treatment," and that "if Dr. Koons recommends additional medical treatment at that time, Plaintiff will pursue a request for such treatment through ordinary CDOC channels."  A review of Plaintiff's allegations in the Complaint here reveal that Plaintiff had at least one appointment with Dr. Koons, at which the doctor recommended Plaintiff undergo an MRI.  Plaintiff apparently, requested an MRI through ordinary channels, as evidenced by the September 7, 2010 from CHP seeking a submission of the request for MRI directly from Dr. Koons. Plaintiff then alleges that his request was eventually approved and scheduled for December 29, 2010, but the machine was not working that day.  Thereafter, the MRI was not rescheduled.

Because the settlement agreement mentions nothing about the scheduling of an MRI and because Plaintiff's allegations reveal that Plaintiff has received the relief set forth in the settlement agreement, the Court cannot conclude that any allegations that Defendants failed to comply with the settlement agreement constitute deliberate indifference.

However, Plaintiff's allegations that (1) Boyd knew about the previously approved MRI; (2) she previously had agreed to schedule the MRI presumably understanding that it had been approved

and scheduled, but never conducted due to a calendaring error; (3) the Plaintiff reminded her in August 2012 that the MRI was never conducted; and (4) the Plaintiff still suffered the same or worse back pain at that time are sufficient to demonstrate a plausible claim for deliberate indifference under the Eighth Amendment. Boyd, therefore, allegedly knew of Plaintiff's serious medical condition, allegedly knew that treatment had been recommended and, despite this knowledge, allegedly failed to ensure that he received the recommended treatment. *See Estelle*, 429 U.S. at 104-05 (deliberate indifference standard "is manifested by ... prison guards in intentionally interfering with the treatment once prescribed."); *see also Martinez v. Garden*, 430 F.3d 1302, 1305 (10th Cir. 2005) (concluding that prison medical staff's knowledge of a plaintiff's serious medical condition, coupled with their failure to ensure plaintiff received medical treatment, could constitute deliberate indifference within the context of the Eighth Amendment).

Defendants assert that Plaintiff's allegations constitute a mere disagreement between himself and the providers or among the providers themselves. The Court disagrees with respect to Boyd; the allegations demonstrate that Boyd had agreed (apparently with Koons) in August 2011 that it was necessary to schedule an MRI, but she neglected to do so. Once she was reminded the following year that the MRI was never conducted, Boyd's alleged refusal to schedule the diagnostic test upon the Plaintiff's complaints of the same or worse pain may demonstrate disregard of a risk of substantial harm.

Accordingly, this Court recommends that the District Court deny Defendants' motion to dismiss Plaintiff's Eighth Amendment claim against Boyd alleging she was deliberately indifferent in August 2012 to requesting an MRI recommended and approved for Plaintiff's back problem, but grant Defendants' motion to dismiss Plaintiff's Eighth Amendment claim against Boyd alleging she

failed to schedule an MRI in February 2011, failed to follow up scheduling an MRI in August 2011, failed to comply with the settlement agreement, and failed to reinstate the prescription for Gabapentin.

### c.      Mark Wienpal

Plaintiff alleges that "[o]n August 22, 2012, Plaintiff told Mark Weinphal [sic] of his settlement and asked about the status of the MRI. No answer was given and Weinphal [sic] refused to submit a new request for one. He also refused to re-instate the Gabapentin. In order to comply with recommended treatment, Plaintiff agreed to try Carbamazapine again not realizing that it was a medication he had already tried." Complaint, ¶ 19, docket #1 at 8.

For the same reasons set forth above concerning Boyd, the Court finds that Plaintiff fails to allege sufficient facts concerning Wienpal's failure/refusal to comply with the settlement agreement and to prescribe the Gabapentin.  As for Plaintiff's allegations that Wienpal knew about the previously approved MRI but refused to request a new one, the Court concludes that Plaintiff fails to demonstrate deliberate indifference.  There are no allegations that Wienpal ever agreed an MRI was necessary for treatment of Plaintiff's back problem; thus, Plaintiff's allegations simply reflect a disagreement between himself and Wienpal or a disagreement between Wienpal and Koons.  *See Scott*, 37 F. App'x at 423; *Self*, 439 F.3d at 1231; *Estelle*, 429 U.S. at 107.

Accordingly, this Court recommends that the District Court grant Defendants' motion to dismiss Plaintiff's Eighth Amendment claim against Wienpal alleging he failed to schedule a new MRI, failed to comply with the settlement agreement, and failed to reinstate the prescription for Gabapentin.

### d.      Richard Hodge

Plaintiff alleges that "[o]n September 20, 2012, Plaintiff was seen by Richard Hodge and told him of the settlement and asked him about status of MRI. No answer was given and Hodge refused to submit a new request for one. Instead he changed meds again back to Baclofen which made the pain exorbitantly worse. He refused to re-instate the Gabapentin. Hodge also insisted on scheduling Trigger Point Injections [TPI] which Plaintiff disagreed with because, though they were minimally effective the first time, they had no effect the second time they were done. He still insisted and scheduled them." Complaint, ¶¶ 20-21, docket #1 at 8-9. Plaintiff also alleges "[o]n November 20, 2012, Plaintiff was taken to medical where Hodge insisted upon giving the TPI. After expressing his concerns and reservations, Plaintiff complied so as not to be accused of refusing treatment." *Id.*, ¶ 23, docket #1 at 9.

For the same reasons set forth above concerning Boyd and Wienpal, the Court finds that Plaintiff fails to allege sufficient facts concerning Hodge's failure/refusal to comply with the settlement agreement and to prescribe the Gabapentin. For the same reason set forth concerning Wienpal, Plaintiff's allegations that Hodge knew about the previously approved MRI but refused to request a new one does not demonstrate deliberate indifference. Finally, Plaintiff's allegations that he disagreed with Hodge's suggested TPI treatment constitute a mere disagreement; the Plaintiff makes no allegations that he was harmed by the TPI treatment or that Hodge refused to provide any treatment at all.

Accordingly, this Court recommends that the District Court grant Defendants' motion to dismiss Plaintiff's Eighth Amendment claim against Hodge alleging he failed to schedule a new MRI, failed to comply with the settlement agreement, and failed to reinstate the prescription for Gabapentin.

e.    Neal Lousberg

Plaintiff alleges "[o]n May 31, 2012, Plaintiff was seen by Neal Lousberg because of problems with meds. Plaintiff told him about the settlement agreement and asked about the status of MRI. No answer was given and Lousberg refused to submit a new request. Plaintiff also told him that he had a hard time keeping medication down because they had started to crush and float them. When they did stay down they were effective for only a short period of time. Lousberg stated that it was now state policy to crush and float Gabapentin so there was nothing he could do. We decided to increase the dosage again to try to prolong effectiveness though the increase was minimal. Plaintiff also informed him that the nurse was not bringing his meds to visits and was told to kite the nurse." Complaint, ¶ 14, docket #1 at 7.  Plaintiff also claims "[m]edication [Gabapentin] was discontinued [July 30, 2012] by Lousberg saying Plaintiff was hoarding medication and that it was non-essential." *Id.*, ¶ 15.

Plaintiff also alleges "[o]n November 1, 2012, Plaintiff was again seen by Lousberg after kiting medical to discuss meds and further treatment for back problems. Plaintiff asked about the status of MRI and was given no answer.  Lousberg refused to submit a new request for one. Plaintiff also stated that he did not want the TPI because after the Baclofen had increased the pain he thought the TPI would make it incrementally worse than that. To comply with recommended treatment, Plaintiff agreed to try a new medication."  Complaint, ¶ 22, docket #1 at 9.

For the same reasons set forth above concerning Boyd, Wienpal and Hodge, the Court finds that Plaintiff fails to allege sufficient facts concerning Lousberg's failure/refusal to comply with the settlement agreement.  For the same reasons set forth concerning Wienpal and Hodge, Plaintiff's allegations that Lousberg knew about the previously approved MRI but refused to request a new one

does not demonstrate deliberate indifference.

However, Plaintiff's allegations that (1) he told Lousberg on May 31, 2012 that the nurse was not bringing his medication to visits; (2) Lousberg advised Plaintiff to "kite" the nurse for this problem; (3) then on July 30, 2012, Lousberg discontinued the medication for Plaintiff's "hoarding" despite knowing that the nurse was not bringing Plaintiff his medication are sufficient to demonstrate a plausible claim for deliberate indifference under the Eighth Amendment. Plaintiff alleges that Gabapentin had been prescribed before he arrived at the CSP and was effective when taken in conjunction with Baclofen as prescribed. Complaint, ¶ 11, docket #1 at 7. The allegations reveal that, after Lousberg discontinued the Gabapentin, Plaintiff suffered severe pain and attempted new medications without success. Consequently, the Court finds that Plaintiff has alleged sufficient facts demonstrating that Lousberg "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159.

Therefore, this Court recommends that the District Court deny Defendants' motion to dismiss Plaintiff's Eighth Amendment claim against Lousberg alleging he was deliberately indifferent in July 2012 when he discontinued the Gabapentin prescribed for Plaintiff's back problem, but grant Defendants' motion to dismiss Plaintiff's Eighth Amendment claim against Lousberg alleging he failed to schedule an MRI and failed to comply with the settlement agreement.

f.      Joseph Wright

Plaintiff alleges that "[o]n March 17, 2013, Joseph Wright discontinued Baclofen medication without discussing or informing Plaintiff of a reason. Med-line nurse said that because it was crushed and floated they had to throw it out every time Plaintiff denied it and that because he wasn't taking it from the nurse [at] every med-line it was cancelled. Wright used information from April

30, 2010 to determine that it was ineffective, but because of inconsistency of care between facilities, he was not aware of regimen constructed by CTCF providers that was effective."  Complaint, ¶ 10, docket #1 at 6.

 For the same reasons set forth above, the Court finds that Plaintiff fails to allege sufficient facts to constitute a claim that Wright failed or refused to comply with the settlement agreement and that Wright knew about the previously approved MRI but refused to request a new one.  Moreover, Plaintiff's allegation that Wright discontinued the Baclofen does not demonstrate deliberate indifference, particularly where Plaintiff alleges that Wright did not know about the effectiveness of the Baclofen coupled with the Gabapentin.  Moreover, Plaintiff alleges that in September 2012 Hodge changed his medication "back to Baclofen which made the pain exorbitantly worse" (*id.*, ¶ 20) and "Baclofen had increased the pain" (*id.*, ¶ 22).  Thus, Plaintiff's allegations do not demonstrate that, in discontinuing Baclofen, Wright demonstrated "deliberate indifference to [his] serious illness or injury." *Helling*, 509 U.S. at 35.

Accordingly, this Court recommends that the District Court grant Defendants' motion to dismiss Plaintiff's Eighth Amendment claim against Wright alleging he failed to schedule a new MRI, failed to comply with the settlement agreement, and discontinued the prescription for Baclofen.

## III.   Breach of Contract claim

As set forth above, Plaintiff alleges that the Defendants failed to comply with the February 24, 2009 settlement agreement in refusing to schedule a previously approved MRI.  Plaintiff argues that the Court has jurisdiction to hear the claim because the alleged breach arises from the same facts supporting Plaintiff's Section 1983 claims for violation of the Eighth amendment.

31

Under Article III of the United States Constitution, a federal district court can exercise jurisdiction over state claims appended to a federal claim if (1) the federal claim is of sufficient substance to confer federal jurisdiction; and (2) the federal and state claims arise out of a "common nucleus of operative fact [which the plaintiff] would ordinarily be expected to try ... in one judicial proceeding ...." *United Mine Workers v. Gibbs*, 388 U.S. 715, 725 (1966). If a federal claim is dismissed before trial, the district court ordinarily should decline to exercise supplemental jurisdiction over the pendent state claim. *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010). A loose factual connection between the claims generally has been held sufficient to satisfy the second requirement. *See* Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction, § 3567, pp. 445-47. In this case, the Court recommends that the District Court find Plaintiff's allegations concerning the Section 1983 claims demonstrate sufficient substance to confer federal jurisdiction, and the remaining Eighth Amendment claim against Boyd and Plaintiff's breach of contract claim arise out of a common nucleus of operative fact.

Next, the Plaintiff must demonstrate that he alleges sufficient facts showing a plausible claim for breach of contract against Boyd. Under Colorado law, to prove a breach of contract claim, a plaintiff must establish the following elements: (1) the existence of a contract; (2) plaintiff's performance or some justification for nonperformance; (3) defendant's failure to perform; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). In this case, there exists a contract (settlement agreement) between the Plaintiff and the CDOC (docket #1 at 18-19). Under the present Rule 12(b)(6) standard, the Court views the allegations in the Complaint as true to determine whether they plausibly support a breach of contract claim; "specifically, whether there are enough facts to support all the elements necessary to establish an

entitlement to relief under the legal theory proposed." *See Curtis v.Brown*, No. 07-cv-00656-LTB, 2007 WL 2590452, at *5 (D. Colo. Sept. 4, 2007).

> Plaintiff contends Defendants breached paragraph 4:
>
> The parties agree that Plaintiff will receive a priority appointment with Dr. Koons for a medical evaluation relating to his back problems. The parties further agree that if Dr. Koons recommends that Plaintiff receive another round of facet block injections, Defendants will approve that treatment. The parties further agree that Plaintiff will receive a priority follow-up appointment with Dr. Koons for further evaluation relating to his back problem. If Dr. Koons recommends additional medical treatment at that time, Plaintiff will pursue a request for such treatment through ordinary CDOC channels.

*Id.* Plaintiff's allegations demonstrate that he performed his part of the agreement – *i.e.*, that he released his claims then pending in the related lawsuit. The Defendants do not dispute this; however, they contend that the plain language of the agreement provides the Plaintiff was not entitled to an MRI and, thus, the allegations fail to demonstrate the third prong. Plaintiff counters that an MRI is an "evaluating" tool that is necessary to fulfill the requirements for the initial and follow-up appointments. Defendants do not dispute that an MRI is a "diagnostic technique," but reply that the plain language of the agreement does not entitle Plaintiff to any diagnostics including an MRI, blood tests, laboratory work, x-rays or the like. Further, Defendants contend that Plaintiff has failed to allege damages from the lack of an MRI.

The Court disagrees with the Defendants that the "plain language" of the agreement demonstrates Plaintiff was merely entitled to appointments with Dr. Koons. Rather, the language may be construed as Defendants' obligation to provide Plaintiff with initial and follow-up "medical evaluations." Defendants initially refer to an MRI as "treatment," for which the agreement places the burden on Plaintiff to pursue, then in the reply brief, concede that an MRI is a diagnostic technique, which is typically used to evaluate a patient. Accordingly, the Court rejects Defendants'

"plain language" argument in this Rule 12(b)(6) analysis and finds that an issue of fact may exist for a factfinder to determine under the circumstances presented here. *See Curtis*, 2007 WL 2590452, at *6 ("To the extent that Defendants argue no contractual obligation exists – based on the plain language of the agreements ... – such arguments are best addressed upon a summary judgment motion.").

Further, Defendants argue that Plaintiff fails to allege damages from any lack of an MRI. The Court once again disagrees. Plaintiff argues that he "is in great pain from nerve damage." Complaint, ¶ 27, docket #1 at 10. Taking this allegation as true, it is possible that an MRI will lead health care providers to determine a more effective treatment than the medications previously and currently prescribed. Again, the Court finds Defendants' argument is more properly raised on summary judgment.

## IV.    Leave to Amend

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)). As such, in this jurisdiction, a court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon,* 935 F.2d at 1109-10. The Court may only dismiss "*sua sponte* when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [them] to amend [their] complaint would be futile." *Id.* (quoting *McKinney v. Oklahoma,* 925 F.2d 363, 365 (10th Cir. 1991)).

Here, the Plaintiff, although proceeding *pro se*, appears to be familiar with the applicable legal concepts and landscape, and he has a firm grasp of the facts and issues in this case, particularly considering that the issues closely resemble those in his 2009 lawsuit. The legal issues stemming from the alleged constitutional violations are not overly complex, novel, or difficult to state or analyze. Further, allowing Plaintiff to amend his Complaint to cure any deficiencies would be futile because the Court has determined that the well-pleaded facts, taken as true, do not state viable causes of action. The Court cannot conceive of any factual averments that would cure the stated defects.

Moreover, the Plaintiff was alerted to the insufficiency of his claims against Defendants in their official capacities and to certain claims against Defendants Lampela, Wright, Hodge, Wienpal, Lousberg and Boyd with the filing of the present motion but failed to seek leave to amend his allegations. In other words, the Plaintiff was given notice and the opportunity to cure his defective allegations, but he did not seize the opportunity. *See Bellmon*, 935 F.2d at 1109-10 ("a motion to dismiss giv[es] plaintiff notice and opportunity to amend his complaint"). Consequently, the Court recommends that the Plaintiff be denied another opportunity to amend his pleading in this matter.

## CONCLUSION

In sum, the Court finds that Plaintiff fails to state a plausible claims for breach of contract and under the Eighth Amendment against Defendants Lampela, Wright, Hodge, Wienpal in their individual and official capacities. The Court also concludes that Plaintiff has failed to allege breach of contract and Eighth Amendment claims against Boyd and Lousberg in their individual and official capacities, except as follows: (1) Plaintiff has stated plausible claims for breach of contract and an Eighth Amendment violation against Boyd for her alleged failure in August 2012 to request an MRI

recommended and approved for Plaintiff's back problem; and (2) Plaintiff has stated a plausible claim under the Eighth Amendment against Lousberg for his alleged conduct in July 2012 when he discontinued the Gabapentin prescribed for Plaintiff's back problem. Moreover, the Court recommends denying Plaintiff leave to amend his Complaint within 30 days of the District Court's order to correct, if possible, the deficiencies noted herein.

Accordingly, based upon the foregoing and the entire record herein, this Court respectfully RECOMMENDS that the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) by Defendants Boyd, Hodge, Lampela, Lousberg, Wienpal and Wright ("CDOC Defendants") [filed February 3, 2014; docket #49] be **DENIED** as to the "exceptions" stated above, and **GRANTED** as to the remainder of Plaintiff's claims against the CDOC Defendants in this case.

Entered and dated at Denver, Colorado, this 3rd day of April, 2014.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge